```
1                   IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF KENTUCKY
2                     CENTRAL DIVISION AT LEXINGTON

3

4    UNITED STATES OF AMERICA,      )
                                    )
5             Plaintiff,            )      5:09-CR-181-S
                                    )      Lexington, Kentucky
6        vs.                        )      May 4, 2012
                                    )      1:02 p.m.
7    GARY MILBY,                    )
                                    )      SENTENCING HEARING
8             Defendant.            )

9

10                      TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE KAREN K. CALDWELL,
11                    UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   FOR THE GOVERNMENT:      KENNETH TAYLOR
                              WADE NAPIER
15                            Assistant United States Attorneys
                              Eastern District of Kentucky
16                            110 West Vine Street, Suite 400
                              Lexington, KY  40507
17
     FOR THE DEFENDANT        R. MICHAEL MURPHY, ESQ.
18   GARY MILBY:              JARROD J. BECK, ESQ.
                              Law Office of R. Michael Murphy
19                            709 Mill Pond Road
                              Lexington, KY  40514
20
     Court Reporter:          Rhonda S. Sansom, RPR, CRR
21                            Federal Official Court Reporter
                              U.S. District Courthouse
22                            101 Barr Street, Room 413
                              Lexington, KY  40507
23                            (859)619-3624

24   Proceedings recorded by mechanical stenography, transcript
     produced with computer.
25
```

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

2

 1      (At 1:02 p.m. on May 4, 2012, with counsel for the parties

 2  and the defendant present, the following proceedings were had.)

 3      THE HONORABLE KAREN K. CALDWELL:  Good afternoon.

 4  Would the Clerk please call the matter to come before the

 5  Court.

 6      THE CLERK:  Yes, your Honor.  Lexington Criminal

 7  Action 5:09-CR-181, United States of America versus Gary

 8  Milby.  Called for sentencing.

 9      THE COURT:  Would the United States make its

10  appearance for the record.

11      MR. TAYLOR:  Good afternoon, your Honor.  Ken Taylor

12  and Wade Napier for the United States.

13      THE COURT:  Mr. Taylor, Mr. Napier.

14      Counsel for the defense.

15      MR. MURPHY:  Good afternoon.  Mike Murphy.  I'm also

16  joined by Mr. Jared Beck on behalf of Mr. Milby, who is

17  seated to Mr. Beck's immediate left.

18      THE COURT:  Mr. Murphy, Mr. Beck, Mr. Milby.

19      This matter is called on for a sentencing hearing.

20  Has the United States received and reviewed the presentence

21  report?

22      MR. TAYLOR:  We have, your Honor, and we have no

23  objection.

24      THE COURT:  Mr. Murphy, have you and your client

25  received and reviewed the presentence report?

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

3

1    MR. MURPHY:  He have, your Honor, and obviously we

2    did have objections and we want to be heard.

3    THE COURT:  I have received your objections that were

4    filed originally, along with your additional proposed written

5    objections.  Are there any others that you would bring to my

6    attention today?

7    MR. MURPHY:  No, your Honor, we would just stand

8    generally on the initial set of objections that were filed

9    and are now part of the addendum to the first presentence

10   report.  And we expounded further on the arguments that we

11   thought had the greatest merit and were the most likely for

12   the Court to decide.

13   THE COURT:  And they're supplemental, and I thought

14   they were redundant or further explanation of your earlier

15   objections.

16   MR. MURPHY:  Right, right.

17   THE COURT:  I will address them, then, one by one.

18   We will proceed here.  Let's use the addendum to the

19   presentence report, Page 33, as our guide in discussing these

20   objections.

21   The first objection, No. 1, is defendant's objections

22   to Paragraphs 13 and 56.  The defendant objects to the

23   application of a three-point enhancement pursuant to

24   3B1.1(b), for role in the offense.

25   Do you have anything to add, Mr. Murphy?

1      MR. MURPHY:  No, your Honor.  I think that in the

2  supplemental objections that were filed that was addressed,

3  and I couldn't say it any better than the way it was written.

4      THE COURT:  All right.  Mr. Taylor?

5      MR. TAYLOR:  We believe that the PSR is correctly

6  calculated, your Honor.  Mr. Milby obviously had a leadership

7  role with regard to a scheme that was otherwise extensive and

8  employed more than five people.

9      THE COURT:  All right.  In looking at the provision

10  for aggravating role in the offense under 3B1.1, there are

11  three possible additions or three possible adjustments that

12  can be made based on the aggravating role.

13      The Court will partially sustain the defendant's

14  objection, in that the Court finds that the three-point

15  enhancement is not appropriate.  The Court will direct the

16  parties' attention to Note 3 of the guideline, which defines

17  "otherwise extensive organization," which no doubt existed

18  both during the Mid-America and Global phases.

19      The Court finds, however, that in the Mid-America

20  phase he directed salespeople, administrative assistants, and

21  others to follow his direction.

22      Therefore, the Court will impose a two-point

23  enhancement under 3 B 1.(c) because he managed criminal

24  activity that involved an extensive organization.

25      So rather than a three-point adjustment the Court

1   will make a two-point adjustment in Paragraphs 13 and 56, so

2   it's partially sustained.

3          Let's look at the second objection, which is to

4   Paragraph 17 of the presentence report.  Excuse me just a

5   minute.  I don't want to confuse my reports.

6          This objection does not affect the guidelines, as I

7   read it; therefore, it does not require a ruling by the

8   Court.  Do you agree, Mr. Murphy?

9          MR. MURPHY:  Yes, I would have to agree with that.

10         THE COURT:  All right.  Mr. Taylor?

11         MR. TAYLOR:  Yes, I agree with that, your Honor.

12         THE COURT:  All right.  The Court will note the

13   defendant's position for purposes of the record.

14         Also, Objection No. 3 does not impact the guideline

15   and I also believe it is resolved; is that correct,

16   Mr. Murphy?

17         MR. MURPHY:  Yes, your Honor; and in fact, that would

18   be the case with any of those objections that are outlined by

19   the probation officer as not impacting the guideline

20   calculations.

21         All right.  And then that would be Objection No. 3 to

22   Paragraph 25, Objection No. 4 to Paragraph 27, Objection No.

23   5 to Paragraph 29, and Objection 6 to Paragraph 33.  Is that

24   correct, Mr. Murphy?

25         MR. MURPHY:  That would be correct up to that point,

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

6

1      your Honor, yes.

2              THE COURT:  All right.  Mr. Taylor?

3              MR. TAYLOR:  I agree, your Honor.

4              THE COURT:  Then let's move to Objection No. 7.

5      Defendant objects to the amount of loss and the number of

6      victims identified in the presentence report.  Do you have

7      anything to add other than what you have written, Mr. Murphy?

8              MR. MURPHY:  No, your Honor.  That ties in with our

9      argument, which I would have to partially admit would run

10     contra to the finding of the jury.  But that's coupled with

11     our argument that Mr. Milby was hired just as a contractor.

12             But I was here yesterday, and Mr. Taylor did point

13     out that it was approximately $80,000 of seed money to start

14     Global, which I would have to concede indicates that

15     Mr. Milby at least thought that he was going to be part of

16     that, even though it turned out they pushed him out.

17             THE COURT:  I understand.

18             Mr. Taylor?

19             MR. TAYLOR:  Well, a couple of things.  It's

20     important that the record reflect the Court's finding as to

21     how the dollar amount was -- or the amount of loss to the

22     victims were identified.

23             And I would just state for the record that the

24     summary exhibit that we submitted contains a lot of that

25     information.  It lists the source of that information; that

1    being the combination of an analysis of bank records,

2    statements sent to us by victims, victims' testimony, and

3    it's very detailed in terms of the identity of the victims

4    and the amount of the loss and where we got that information.

5        So we would just simply ask the Court to make the

6    finding that the dollar amount of the victims was based on

7    that research and analysis.

8        If the original objection was to the fact that

9    Mr. Milby was not involved in part of the conspiracy, that

10   being the Global phase, I think I just heard a concession

11   that he was.  He was more than just a person who put up some

12   seed money, but he also trained salespeople in the initial

13   stages.

14       And under the Pinkerton doctrine, a person's -- a

15   coconspirator's doctrine is attributable to him if it is

16   reasonably foreseeable.  And he had every reason to foresee

17   that they would take what they all together had started and

18   run with it, and I think that's exactly what happened.

19       THE COURT:  All right.  The Court finds by a

20   preponderance of the evidence that the amount of loss and the

21   number of victims identified in particularly Exhibit A of the

22   presentence report accurately reflects the number of victims

23   and the amount of loss.  It is supported by the evidence

24   presented at trial and also reflects the jury's verdict.

25       The Court understands, though, that Mr. Milby's

1  contention is that I believe he would have been pushed out by

2  his partners.  They intended to kick him out of the scheme

3  once they had used him.

4       But the Court saw evidence of this defendant standing

5  up, using a false name, training people specifically to

6  become salespeople for the Global phase.  So he was well

7  aware of and a willing participant in the particular scheme

8  that ultimately became the Global phase, and it was not

9  markedly distinguishable from the methods and techniques that

10 had been used in the Mid-America phase, but merely more

11 sophisticated, as it was moved for the purpose of avoiding

12 jurisdiction of regulators, as well as to insulate the

13 perpetrators from civil liability and civil judgments

14 obtained by the victims of the scheme.

15      So the Court will overrule defendant's Objection No.

16 7 to Paragraphs 44, 45, 51, and 52 of the presentence report.

17      All right.  Objection No. 8 is objections to

18 Paragraph 47.  Mr. Milby claims that he is entitled to a

19 two-point downward adjustment for acceptance of

20 responsibility because he relied on legal advice from Coffman

21 and others that his conduct was legally permissible.

22      Do you have anything to add to that, Mr. Murphy?

23      MR. MURPHY:  I do, your Honor.  A portion of that

24 will need to be taken up at the bench, since this is a public

25 hearing.

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

9

1        THE COURT:  You may.

2     (Proceedings were held at the bench and filed under seal,

3   after which the following proceedings were held in open

4   court.)

5        THE COURT:  We will be back on the public record.

6        In this case, Gary Milby denied factual guilt, in

7   spite of evidence that showed him on tape telling what were

8   clearly lies and using a false name while training others to

9   sell interests in oil wells, based on information he knew at

10  the time to be false.

11       In light of all the other evidence in the case, this

12  particular piece of evidence shows that Gary Milby was

13  absolutely aware of the wrongfulness of his actions.  And

14  using the defense of "I was taking legal advice" as a shield

15  for making what are known to be material misrepresentations

16  is completely incredible, in light of the vast amount of

17  evidence in the case.

18       It's not against the law to lie about your name, but

19  when the purpose of doing so is to prevent others from

20  finding out about the trouble you've created in other places,

21  I find it difficult to believe that anyone could actually

22  assert factual innocence and then claim acceptance of

23  responsibility.

24       Therefore, the objection will be overruled.

25       However, I do think that there are factors that I can

Case: 5:09-cr-00181-KKC  Doc #: 514  Filed: 05/10/12  Page: 10 of 35 - Page ID#: 7992
U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

10

1    consider with respect to a variance, and we can talk about

2    some of these things in that context later.

3         Let's move to Objection No. 9, Paragraph 53, the

4    objection to a two-level increase for violating

5    administrative orders.  I am assuming, Mr. Taylor, that the

6    United States' position is the same as it was with respect to

7    Milby's codefendant, Bryan Coffman, and the United States

8    will concede that objection?

9         MR. TAYLOR:  Yes.  As I said in the other case, while

10   we believe that Mr. Milby clearly violated the spirit of

11   various cease-and-desist orders, we cannot find where he

12   continued to sell in a specific state covered by a specific

13   order after it was entered.

14        THE COURT:  All right.  That objection, then, will be

15   sustained.

16        Objection No. 10 to Paragraph 57 of the presentence

17   report I also believe has been resolved regarding the

18   position of trust enhancement; is that correct, Mr. Murphy?

19        MR. MURPHY:  Has been resolved?

20        THE COURT:  I understood from the presentence report

21   that the defendant conceded that, but I may have read it

22   incorrectly.  Was he in a position of trust by virtue of

23   being the president of Mid-America?

24        PROBATION OFFICER:  Your Honor, if I may speak?

25        THE COURT:  Yes, you may.

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

11

1          PROBATION OFFICER:  I had understood that we had

2     resolved it, but if it's not, the defendant --

3          THE COURT:  I will certainly hear from you, if you

4     want to take issue with it.

5          MR. MURPHY:  No, I will stand on the objection, your

6     Honor, as written today.

7          THE COURT:  All right.  I'm going to sustain that

8     objection.  Very often, it seems to me that I interpret

9     position of trust enhancements to apply when there is a

10    long-standing, legitimate business in which the perpetrator

11    holds a particular position of trust that would enable them

12    to take advantage of a legitimate business and go undetected

13    by the uniqueness of their position, such as a bank teller or

14    a bank officer or a trust officer, someone who actually had

15    authority to act within a legitimate industry or business.

16          In this case, this whole business was basically a

17    sham, and the people who were defrauded were defrauded hand

18    to hand, the victims of this case, by Milby and his

19    compatriots.  Therefore, I don't think that this enhancement

20    applies under these particular circumstances, so I will

21    sustain the objection.

22          Objection No. 11 to Paragraph 61 to the total offense

23    calculation, I have partially sustained that in that I have

24    granted relief to some of the defendant's objections and will

25    note that you preserve your objections to those rulings I

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

1    have made with which you disagree.

2            Mr. Murphy?

3            MR. MURPHY:  Yes, your Honor.  That's always been

4    just me being a little supercautious and paranoid, because

5    when you object to a certain guideline you have to realize it

6    may be used to calculate a total somewhere else.  So, you

7    know, you just object to that, too, to make sure nobody can

8    say "Well, you didn't object to the total.  You objected to

9    the sum of some of the parts, but you didn't object to the

10   total."  And again, that's paranoia, I think.

11           THE COURT:  I don't think it's necessary, as we've

12   dealt with each of your objections individually, but I

13   understand the purpose of that objection.

14           Objection No. 12 to paragraphs 70, 72, 77, 79, 84,

15   and 85.  These appear to be nothing but the defendant's

16   version of the facts which, in this case, some were not in

17   evidence.  And I will note them for the record, but I don't

18   think it requires any ruling.

19           Mr. Murphy?

20           MR. MURPHY:  I agree, your Honor.

21           THE COURT:  Mr. Taylor?

22           MR. TAYLOR:  I agree.

23           MR. MURPHY:  That arose out of meetings that we had

24   with Mr. Robinson where we had some lengthy discussions about

25   that.

1          THE COURT:  I understand.

2          Objection No. 13, Paragraph 89, the defendant objects

3     to the probation officer's interpretation of 5G1.2(d), first

4     on grounds that it didn't include his objections to the

5     underlying calculations and adjustments.  We've addressed

6     those here.  You've preserved that objection.

7          Secondly, that statistically a 470-month term of

8     imprisonment is equal to life imprisonment and is sufficient

9     to satisfy the guidelines.

10          In looking at that, it appears that that's something

11     that I can note for review, but that's not a guideline that

12     directs the Court to impose 470 months instead of life, as

13     the guidelines were calculated here.  Is that correct,

14  Mr. Murphy?

15          MR. MURPHY:  It is, your Honor.  And it may be even

16  more moot now, in view of your rulings here.  Because if I'm

17  keeping track of this, we've gone from a 44 down to --

18          THE COURT:  The guideline is no longer life.

19          MR. MURPHY:  Exactly.

20          THE COURT:  I understand.

21          MR. MURPHY:  And once that's off the table, then

22  anything goes.

23          THE COURT:  So that's moot?

24          MR. MURPHY:  Yes.

25          THE COURT:  All right.  Mr. Taylor?

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

14

1          MR. TAYLOR:  I agree, your Honor.

2          THE COURT:  All right.  Now, the supplemental

3    objections which were filed on April 26, 2012, we've dealt

4    with those; the acceptance of responsibility, which as I said

5    was a reiteration of a previously stated objection, in that

6    the defendant asserts the bespeaks caution doctrine as a

7    theory in this case.  That was really never offered at trial

8    or in any of the defendant's prior pleadings before

9    sentencing.

10          I would submit that, regardless, it doesn't apply

11   whether the legal advice was given by a fellow criminal

12   defendant for the purposes of avoiding both civil and

13   criminal liability, rather than giving clearly erroneous

14   legal advice.

15          But I will note that objection for the record.

16          Also, the objection to Paragraph 53, which was

17   reiterated in the subsequent objections regarding

18   administrative orders, has been resolved in the defendant's

19   favor.

20          Likewise, the objection to the adjustment for abuse

21   of position of trust at Paragraph 57 has been resolved in the

22   defendant's favor.

23          Now, let's recalculate the guidelines in view of the

24   Court's rulings with respect to those objections raised by

25   the defendant.

1    Mr. Robinson, do you want to check my math here real

2    quick?  Am I at 37 or 39?

3    PROBATION OFFICER:  Your Honor, may I approach the

4    bench?

5    THE COURT:  You may.

6    (Probation officer confers with the Court at the bench.)

7    THE COURT:  Counsel, you may take a moment to look

8    over your presentence reports.  And if my calculations are

9    correct, the base offense level is 7 in Paragraph 50.

10   Paragraph 51 would be 22 for the specific offense

11   characteristics.  Paragraph 52 is 6.  Paragraph 53 would be

12   zero.  Paragraph 54 would be 2.  Paragraph 55 would be zero.

13   Paragraph 56 is 2, and Paragraph 57 is zero.

14   If my calculations are correct, that's 39.

15   PROBATION OFFICER:  Correct, your Honor.  I concur.

16   THE COURT:  Any objection to that calculation,

17   Mr. Murphy?

18   MR. MURPHY:  No.  We would agree, your Honor.

19   Starting at the 44 and you sustained objections that

20   eliminated five of the points, so we're now at 39.

21   THE COURT:  All right.  Mr. Taylor?

22   MR. TAYLOR:  I agree.

23   THE COURT:  I didn't go to med school because I

24   couldn't do science and I'm not a statistician because I

25   couldn't do math, so I need all the help I can get from you,

U. S. v. Milby, 5:09-CR-181-S
**Sentencing Hearing (5/4/12)**

16

1    counsel.

2         All right.  With an adjusted offense level or total

3    offense level of 39 and a criminal history category of 1, the

4    guideline range is adjusted to 262 to 327 months.

5         The Court will adopt the factual findings contained

6    in the presentence report, noting all of the defendant's

7    objections.  And as I have said, after having considered all

8    of the objections raised by the defendant, the Court finds

9    that the advisory guideline range for this defendant as it

10   pertains to counts of the conviction is from 262 to 327

11   months.  Based on a total offense level of 39, a criminal

12   history category of 1, the maximum statutory penalty as to

13   each count is 20 years.

14        At this time, I would like to ask the United States

15   if it has any motions that it would like to bring before the

16   Court.

17        MR. TAYLOR:  One moment, your Honor.

18     (Government counsel confer.)

19        MR. TAYLOR:  Your Honor, I'm informed that we're

20   having some trouble with some things that the Clerk's Office

21   needs to put in a restitution order, and so we would request

22   that the restitution decision be postponed, that the judgment

23   be entered today but that the restitution be added at a later

24   time.

25        THE COURT:  The amount of restitution?

U. S. v. Milby, 5:09-CR-181-S
**Sentencing Hearing (5/4/12)**

1      MR. TAYLOR:  I think there are certain things that

2  she's having to come up with for purposes of the judgment.  I

3  don't think it's the amount.

4      THE COURT:  Is there any objection to that?  I think

5  the Court has --

6      MR. TAYLOR:  I think it's the payee issues.

7      THE COURT:  The payee issues?  The Court has, what,

8  30 days or 60 days after the entry of --

9      MR. TAYLOR:  It's 90 days, 90 days under the statute

10  that you can leave the restitution open.  I think we would

11  request that.  We may get it done sooner, but she's pulling

12  her hair out trying to get all that together.

13      THE COURT:  In terms of giving our Clerk the correct

14  addresses with which to --

15      MR. TAYLOR:  It's breaking down corporations and

16  investment groups into specific payees, as I understand it.

17      THE COURT:  And we would of course want Mr. Murphy to

18  be able to object to those payees and amounts, in the event

19  that they are incorrect.

20      MR. TAYLOR:  Correct.

21      THE COURT:  Mr. Murphy, would you like that

22  opportunity?

23      MR. MURPHY:  I would, your Honor.

24      THE COURT:  All right.  Then what I will do is

25  postpone the restitution decision, to be determined within 90

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

1    days of this day of sentencing.

2         And then I will give you -- I would ask you,

3    Mr. Taylor, if you can to give any information that you have

4    to Mr. Murphy within 30 days of today's date so that

5    Mr. Murphy will have two weeks to respond, and we can get

6    this resolved within the 90-day frame permitted by statute.

7         MR. TAYLOR:  Very well.

8         MR. MURPHY:  Will the judgment be entered, though,

9    notwithstanding that?

10        THE COURT:  Yes.  The judgment, notwithstanding

11   restitution, will be entered today, consistent with the

12   statute.

13        MR. MURPHY:  And the way I understand the rules and

14   the statutes that we're talking about, they're different, but

15   I'm still going to be under a 14-day deadline to file any

16   notice of appeal, should my client choose to do that?

17        THE COURT:  If the judgment is final, I think so.  I

18   think so.  I mean, I would file it regardless.  I can't give

19   you the law on that, but I would file it regardless,

20   certainly.

21        MR. TAYLOR:  That's correct, it would be a final

22   judgment, but it could be amended and there could be a

23   supplemental notice of appeal.

24        THE COURT:  And I think for purposes of determining

25   punishment under the law, I'm going to go ahead and make a

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

1  finding as to the amount because they're slightly different.

2  As to my restitution order, I will withhold judgment on that

3  until we have had the opportunity to fully brief it among the

4  parties.

5          All right.  Anything else, Mr. Taylor?

6          MR. TAYLOR:  No, your Honor.

7          THE COURT:  All right.

8          MR. MURPHY:  There's one matter, your Honor.

9          THE COURT:  Yes?

10         MR. MURPHY:  A matter of housekeeping that I would

11 like to bring to the Court's attention.

12         THE COURT:  You may.

13         MR. MURPHY:  On April the 23rd of this year, Docket

14 Entry 473, you ordered us to provide an accounting no later

15 than today of any money that was transferred to foreign

16 jurisdiction by Mr. Milby; and also, if in fact those funds

17 exist, that he immediately assist the government in

18 repatriating those.

19         THE COURT:  I set that judgment aside.  I set that

20 order aside yesterday.  I don't know if you heard that.

21         MR. MURPHY:  I'm sorry.

22         THE COURT:  I doubt that he has any; but if you want

23 to make that representation, you may, or you may wait.

24         MR. MURPHY:  I'm prepared to do that now, your Honor,

25 and I think I can speak for Mr. Milby.

U. S. v. Milby, 5:09-CR-181-S
**Sentencing Hearing (5/4/12)**

20

1        This is a matter that we discussed over the past two

2    and-a-half years.  There may at one time have been assets

3    that supposedly belonged to Mr. Milby that were transferred

4    to some foreign jurisdiction.  He has absolutely no idea how

5    that happened, where they are, if in fact they were ever

6    there.  He thinks that someone has pilfered those, either an

7    unnamed person in the indictment or another person named in

8    the indictment.

9        He has absolutely no money.  He's been rather

10    destitute throughout this.  I'm trying to think of his name,

11    Buster Skinner -- Buddy Skinner, from Tennessee, was doing a

12    pretty good job, a pretty good job of dogging Mr. Milby

13    throughout the pendency of this case.  He even one time went

14    to the trouble of going all the way to Mr. Milby's local bank

15    and emptying his bank account of the grand total of $235.

16        And I think he submitted some sort of a bill at one

17    time for maybe $150,000 for his services, and I don't think

18    he ever got more than $1,000 total from Mr. Milby.

19        The other thing that -- and this is the telling sign

20    for me.  Mr. Milby would not have a public defender as his

21    lawyer if he had the serious money that people in this case

22    have thought that he may have had.  I know he would have

23    hired a lawyer.  I'm not saying he's dissatisfied with me.  I

24    personally think he got a pretty good deal to get me for a

25    free lawyer, but he would have hired someone.

1    And I think the government even knows at one time he

2  was trying to borrow $300,000 from Clint -- Terry Goff.  And

3  maybe we disagree about the motive behind that, but that's

4  out there, too.

5    So I'm satisfied that he's destitute, as far as that.

6    THE COURT:  All right.  The Court will accept your

7  representation here on the record as Mr. Milby's response to

8  its order.  Although I'd set it aside, I suspected that might

9  be what your response was.  So I appreciate it, Mr. Murphy.

10    Also, the Court will note for the record, as I know

11  all counsel is aware, that victims of the fraud appeared

12  yesterday in court and gave statements.  I have directed that

13  transcripts of that be prepared and provided to you and to

14  Mr. Milby in this case.  Have you done so, Mr. Murphy?

15    MR. MURPHY:  I've not been able to convey all of that

16  information to Mr. Milby, your Honor.  But I'm of the opinion

17  that it would serve no real useful purpose, because we waived

18  his appearance yesterday on that.  I saw nothing in there to

19  shift the scales one way or the other, especially in light of

20  the 95 victim impact statements of record.

21    THE COURT:  Very well.  Well, they are available to

22  him, and I want to make sure that they have been made

23  available to him at the victims' request.

24    I will make whatever use of them the Court deems

25  appropriate in determining the sentence.

1          Mr. Milby, I'm going to hear from the lawyers now;

2     but before I do, is there anything that you would like to say

3     or have me consider in determining the punishment in this

4     case?

5          Mr. Beck, pull that over there so Mr. Milby can get

6     the microphone up to him.

7          THE DEFENDANT:  Your Honor, I apologize for

8     yesterday.

9          THE COURT:  No apology is required.

10         THE DEFENDANT:  Thank you for giving me that time to

11    try to regroup.

12         I'm not a bad person.  I didn't start this out to do

13    what turned out to be this.  At one time I had 11 different

14    lawyers telling me what to do, and they all agreed that I was

15    doing it by the book.

16         Now, I've since found out that that was wrong.  When

17    the SEC stepped in in 2006 and told me that they wished that

18    I'd shut down until they could make heads or tails of what

19    was going on, I did exactly what they said.  I since found

20    out that it was -- I was being scammed, and it wasn't exactly

21    like it's supposed to have been.

22         But by any small mention of it, I'm sorry.  I'm

23    sorry.  I'm sorry for the people who invested.  I'm sorry for

24    myself and my family, to be putting all this through them, or

25    them through this.

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

23

1       The Court -- I know that I have to be punished, and

2  I'll accept that like a man.  I don't know what else other to

3  say, ma'am.

4       THE COURT:  Thank you very much, Mr. Milby.

5       Mr. Murphy, and I'm particularly interested in

6  3553(a) factors in this case.

7       MR. MURPHY:  Yes, your Honor.  I don't have a long

8  speech planned today.  My sentencing memorandum and request

9  for relief under 3553 in the form of a downward variance, I

10  think that speaks for itself.  I usually don't file

11  memorandums that lengthy, but I wanted to get all that on the

12  table for the Court and I believe I have addressed those

13  factors.

14       One other thing I would just say is that let the

15  record reflect that I'm not one of those 11 lawyers that

16  Mr. Milby referred to a while ago.

17       I think in this particular case that this case falls

18  outside the norm for the reason of Mr. Milby's health.

19  During the first two years of a two and-a-half year period of

20  time that I've known him, I saw a gradual decline in his

21  health.  And during the last several months since his

22  incarceration, I've seen a substantial decline in his health.

23       He's been a bit difficult to communicate with for

24  various reasons.  I think one is that he's no longer taking

25  the psychotropic medications that he was taking before.  He's

1    had cardiac events and he's had the cerebral, the brain

2    events that are in fact not true strokes, but they are

3    precursors to strokes which I guess could occur at any time.

4         The medical attention that he's getting at Grayson

5    County I have to admit is better than most of the jails that

6    I'm used to having clients there.  They at least have medical

7    personnel there to attend to his needs.  I still think he is

8    going to have to go to a federal medical center somewhere.  I

9    think the Court could agree that he could not survive in a

10   general population, and I don't think he could perform the

11   daily functions to take care of himself in a general

12   population.

13        So for that reason, I'm going to ask that you

14   recommend that he be placed in a federal medical center with

15   an emphasis on being placed as close to his home as possible.

16   That would be right here in Lexington, Kentucky.

17        The sentencing process, and I probably shouldn't even

18   say this, is not about retribution or getting vengeance or

19   whatever.  I know there was a lot of anger in the victim

20   impact statements.  I actually spoke with the two victims

21   that were here yesterday, and I cannot say that I did not

22   feel some of their pain.  And in reading only about half of

23   those victim impact statements, I tried to put myself in a

24   position of what if that was my mother, what if that was my

25   sister?

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

25

1     So obviously, one of the parts of a sentence is just

2     purely punishment, and Mr. Milby knows that.  But I believe

3     that because of his health -- and I don't think any of it is

4     staged.  I think it's real.  I've seen it myself, and I think

5     that anyone looking at Mr. Milby today could say he's not the

6     person he was when we were here at trial a year ago.

7     So I'm asking the Court for a substantial downward

8     variance because of that.  I know that age and infirmity

9     under the guidelines are not normally grounds for departure,

10    so I didn't move for that.  I think that you can practically

11    do it by asking for a variance, so it's the same thing.

12    So I am asking the Court to show him the most amount

13    of sympathy that you can find, that you think is appropriate.

14    And other than that, your Honor, I rest on the

15    materials in my sentencing memorandum.  I think I covered all

16    the factors there adequately.

17          THE COURT:  Thank you, Mr. Murphy.

18          MR. MURPHY:  Thank you, your Honor.

19          THE COURT:  Mr. Taylor?

20          MR. TAYLOR:  I will be brief, your Honor.  I have

21    also submitted to you a sentencing memorandum jointly for

22    both defendants.

23    And as you know from the perspective of the United

24    States, who I appear here both for the United States

25    generally and for the victims of this offense specifically,

1    we considered the most salient factors under 3553 to be the

2    nature and circumstances of the offense, the history and

3    characteristics of the defendant, and the need for the

4    sentence to reflect the seriousness of the crime, to promote

5    respect for the law, provide just punishment, deter criminal

6    conduct, and protect the public.

7         As we said with regard to Mr. Coffman, but even more

8    so with regard to Mr. Milby, his conduct was predatory.  He

9    sought out victims.  And he sought that very little -- he did

10   very little in the way of honest representations.  In fact,

11   it's hard to believe that any person -- and I know the Court

12   doesn't believe the statement that he thought he was

13   following the advice of counsel.

14        How can you believe that counsel would tell you to

15   use a false name in a sales presentation, say you were Jerry

16   Miller?  A lawyer could tell you to pump oil in a hole and

17   blow it out and pretend it's freshly struck oil or tell

18   people that you're making 100 barrels a day on a new well

19   when that just simply isn't true?  Or that there's no risk to

20   your investment, that "No one has ever lost money with me."

21   Or that "I have oil wells in Texas right now," which wasn't

22   true.  Or that "So and so is right now getting certain levels

23   of royalties," which wasn't true.

24        It's beyond belief that anyone could think that some

25   lawyer said that's okay conduct.

1      But importantly today, your Honor, the victims need

2  to see that this kind of conduct does have consequences.

3      As I said with Mr. Coffman's -- at Mr. Coffman's

4  sentencing, most of them realize if they receive anything

5  back it's going to be pennies on the dollar.  And Mr. Milby

6  may not have assets and cannot contribute to the restitution,

7  but I think it's important for them to see that his conduct

8  did not go unpunished and unnoticed.

9      So we believe that the Court should fashion a

10  sentence that will not only deter Mr. Milby from any future

11  fraud but to deter anyone out there who might be considering

12  engaging in this kind of conduct.

13      So we ask the Court to consider all those factors and

14  fashion an appropriate sentence.  Thank you.

15      THE COURT:  The Court will now state the sentence,

16  and if there is no legal objection it will be imposed as

17  stated.

18      The Court is required to consider all of the factors

19  embodied in the Sentencing Reform Act of 1984, as modified by

20  the Supreme Court in the Booker and Fanfan decisions.

21      The Court is charged with finding a sentence that is

22  sufficient but not greater than necessary to comply with the

23  purposes of Title 18, United States Code, Section 3553(a).

24  The Court must consider the nature and the circumstances of

25  the offense or offenses in this case.  The scope of this

1    crime in terms of the number of victims and the amount of

2    their loss speaks for itself.

3         This case involved callous and calculated conduct

4    designed to extract money from investors while shielding the

5    perpetrators with the appearance of legitimacy and legality.

6    These perpetrators were using the law to shield themselves

7    from legal responsibility to their investors and regulatory

8    oversight, and in so doing broke the criminal laws of the

9    United States.

10        The Court must also consider the history and

11   characteristics of the defendant in this case.  Invariably,

12   white-collar criminals like this one come before the Court

13   with little or no criminal history.

14        This defendant has no significant criminal history in

15   terms of prior convictions.  Interestingly, however, his only

16   conviction -- which did not count in his guideline

17   calculations -- was many years ago, and it involved moral

18   turpitude when he sold somebody a boat for $8,000 without

19   telling them that it was subject to a security interest that

20   he hadn't satisfied.

21        This defendant has, and has for a long time, battled

22   drug and alcohol addiction.  Although he hasn't been

23   criminally charged for cocaine possession, his bond was

24   revoked by this very Court because he was using cocaine while

25   under the Court's supervision.  Despite at least five

 1    inpatient hospital stays of at least 30 days' duration over

 2    the years, his substance abuse persists.

 3            This sentence must reflect the seriousness of this

 4    offense and promote respect for the law.  The defendant's

 5    history of repeated substance abuse, even under the

 6    supervision of this Court, shows that he does not have a

 7    great deal of respect for the law.

 8            Also, the seriousness of this offense, to identify it

 9    as serious is an understatement.  As I said, the scope and

10    breadth is obvious from the number of victims and the scope

11    of loss, which exceeds $36 million.  The money came from

12    individuals, working people, many of whom suffered financial

13    devastation because of Gary Milby's lies that were calculated

14    to make them believe that the business he now describes as

15    risky was virtually risk-free because of his particular

16    knowledge, history, and experience.

17            The only respect for the law demonstrated by this

18    defendant was to use it to shield himself and his compatriots

19    from financial liability when the truth would unavoidably be

20    discovered by the duped investors, and they hoped that their

21    legal maneuverings would render them judgment-proof.

22            The Court must consider adequate deterrence to

23    criminal conduct.  As previously stated, invariably

24    white-collar criminals come before the Court with little or

25    no criminal history.  They tend to appear mainstream and

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

30

1   enjoy the respect and dignity and trust not afforded to

2   street criminals.

3        However, as I noted in a previous hearing, unlike the

4   armed robber who knocks off a convenience store openly and

5   honestly, the white-collar thief cloaks himself in social and

6   business legitimacy, armed with lawyers and documents, as he

7   steals millions of dollars from hundreds of victims.

8        This is a crime based on greed instead of need or

9   desperation, committed by people who operated under dark of

10   night and under a cloak of deception.

11        Deterrence is important here because of the wide

12   swath of economic and emotional devastation created by this

13   particular kind of crime.  Here, the sentence must also

14   protect the public from further crimes of this defendant.

15        I have to say that in reviewing the evidence in this

16   case the only gusher in the case was Gary Milby, who spewed

17   lie after lie with apparent ease.  The ease with which he

18   prevaricated on tape before groups of people, once while even

19   using a false name, suggests that even in his current,

20   unhealthy state he presents a constant danger to himself and

21   to the people around him.

22        To provide needed training and treatment and medical

23   care is another factor the Court must consider in imposing

24   sentence.  No doubt this defendant is seriously ill, very

25   ill; unfortunately, mostly because of his own behavior and

U. S. v. Milby, 5:09-CR-181-S
**Sentencing Hearing (5/4/12)**

31

1   drug abuse.  This defendant has an appetite for cocaine that

2   has nearly killed him physically and certainly economically.

3          This case presents the truly unusual circumstance in

4   which jail or prison and removal from the drug market has

5   literally saved his life.

6          What is just in this kind of situation?  Here, the

7   Court looks for advice from the sentencing guidelines and

8   believes that this justice must be tempered with mercy;

9   therefore, the Court will vary downward in this case and

10  finds that a sentence of 240 months is necessary to address

11  the factors under the sentencing statute.

12         Therefore, it is the judgment of this Court that Gary

13  Milby is committed to the custody of the Bureau of Prisons to

14  be imprisoned for a term of 240 months on each count, to be

15  served concurrently with one another, for a total of 240

16  months.

17         Upon release from prison, the defendant will be on

18  supervised release for three years.  This term consists of

19  three years on every count of conviction, all to run

20  concurrently.

21         Upon release from prison, the defendant shall report

22  in person to the Probation Office in the district to which

23  he's released.  He shall not possess a firearm, destructive

24  device, ammunition, or a dangerous weapon.  He shall submit

25  to one drug test within 15 days of release from prison and at

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

1    least two periodic drug tests thereafter.

2           Also, the defendant shall comply with the following

3    special conditions.  He shall abstain from the use of

4    alcohol.  He shall submit to any approved treatment for

5    substance abuse at the direction and the discretion of the

6    Probation Office and shall submit to drug and alcohol

7    testing, all at the direction and discretion of the Probation

8    Office.

9           He shall pay to the United States District Court

10   Clerk a special assessment of $1,500.  That's due

11   immediately.

12          The Court finds that the victims of this crime have

13   suffered a compensable injury under the Victim and Witness

14   Protection Act but defers its judgment with respect to the

15   amount of restitution and its allocation, as we have

16   previously discussed here in court.

17          The defendant doesn't have the ability to pay a fine,

18   though, and the Court will not impose a fine in this case.

19          Other than the legal objections previously stated,

20   Mr. Murphy, are there any other reasons that this Court

21   should not impose sentence as stated?

22          MR. MURPHY:  No, your Honor.

23          THE COURT:  Very well.  The Court -- did I enter a

24   forfeiture order with respect to Mr. Milby, Mr. Murphy, or

25   was that all with respect to Mr. Coffman?

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

1           MR. MURPHY:  I'm not sure that Mr. --

2           THE COURT:  I think there's a money judgment.

3           MR. MURPHY:  I'm not sure that Mr. Milby had any

4    interest in any of the property that was ordered forfeited.

5           THE COURT:  Madam Clerk, can you look at Docket

6    Entries No. 481 and 489?  To the extent that they apply to

7    Mr. Milby, I will incorporate them in this judgment.  I'm

8    just not sure that they do.  They may apply to Mr. Coffman.

9           MR. TAYLOR:  I believe the money judgment does apply

10   to Mr. Milby, your Honor.

11          THE COURT:  Does it?  Okay.  We will ask the Clerk to

12   just double-check and be sure that I'm correct about that

13   particular item.

14          THE CLERK:  What are the numbers again?

15          THE COURT:  481 and 489.  If my law clerk could

16   assist the Clerk of the Court in identifying those documents.

17   I just want to get these administrative matters correctly

18   preserved.

19          Mr. Taylor, are there any legal objections to the

20   sentence as stated?

21          MR. TAYLOR:  Yes, your Honor.  I believe I must

22   make --

23          THE COURT:  It's 469.  Is that the only one?  There

24   is a money judgment, No. 469 of the docket, that deals with

25   Gary Milby.  I will incorporate that in the Judgment and

1    Commitment Order for purposes of finality of the sentence.

2        Yes, Mr. Taylor?

3            MR. TAYLOR:  I believe we need to move to dismiss the

4    underlying indictment.

5            THE COURT:  The underlying indictment will be

6    dismissed.

7            Is there anything else that we need to address in

8    terms of pending motions?

9            MR. MURPHY:  Your Honor, I would like the Court to

10   make that recommendation about the medical facility.

11           THE COURT:  I will.  The Court will make a

12   recommendation that the defendant be housed in a facility

13   that will be able to address the defendant's psychological

14   and physical needs.

15           What I'm going to do is, we'll try to get him back to

16   Grayson.  I do believe that they have been taking good care

17   of him there and are familiar with his history.  We will try

18   to get him into a federal medical institute as soon as

19   possible.  I will recommend Lexington, which I believe is the

20   one closest to his home and family members.

21           As you know, Mr. Murphy, I can't guarantee placement

22   there, but we'll do what we can.

23           At this time, the Clerk of the Court will give the

24   defendant advice regarding his right to appeal in this

25   matter.  Mr. Milby, I know that Mr. Murphy is going to keep

U. S. v. Milby, 5:09-CR-181-S
Sentencing Hearing (5/4/12)

35

1   you well advised of that and protect your interests, but I

2   would like you to listen to the Clerk of the Court.  I'm

3   going to give you a copy of the advice that's being read to

4   you.  We'll ask that you and your lawyers sign an

5   acknowledgment form so that we can show it was given to you

6   here in court.

7           Please proceed.

8           THE CLERK:  Yes, your Honor.

9       (Defendant advised of right of appeal by the Clerk of the

10  Court.)

11          THE COURT:  The record will reflect that the

12  defendant and his counsel have executed the acknowledgment

13  form.  It will be filed in the record.

14          That concludes our hearing.  Court will be adjourned.

15      (Proceedings concluded at 2:02 p.m.)

16       I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.

17

18      Rhonda S. Sansom                    5/10/2012
    _____   _____

19    Rhonda S. Sansom, RPR, CRR                Date

20          ORIGINAL TRANSCRIPT FILED ELECTRONICALLY

21

22

23

24

25