NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0616n.06

No. 14-6516

FILED
Sep 01, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,        Plaintiff-Appellee, v. BRYAN COFFMAN,        Defendant, CORRIE ANDERSON,        Claimant-Appellant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |

BEFORE:    GUY, BATCHELDER, and MOORE, Circuit Judges

  **ALICE M. BATCHELDER, Circuit Judge.**  In a consolidated case arising out of both a criminal and a civil forfeiture action, Corrie Anderson successfully asserted a legal interest in a condominium that had been forfeited against her brother-in-law, Bryan Coffman.  Because she "substantially prevail[ed]" in a "civil proceeding to forfeit property," 28 U.S.C. § 2465(b)(1), we hold that she is entitled to attorney's fees under the Civil Asset Forfeiture Reform Act ("CAFRA").  We therefore REVERSE the district court's holding to the contrary and REMAND for proceedings consistent with this opinion.

# I.

During a five-year period beginning in 2004, Corrie Anderson's brother-in-law, Bryan Coffman ("Bryan"), and his business partner, Gary Milby, defrauded almost 600 investors out of over thirty-six million dollars through a complex scheme involving shell companies and securities in Kentucky oil wells. *See United States v. Coffman*, 574 F. App'x 541 (6th Cir. 2014). In December 2008, the federal government, while investigating Bryan, his wife Megan, and Milby, filed a complaint for civil forfeiture *in rem* against multiple assets that the three purportedly owned, including a condominium at 2032 Egret Crest Lane in Charleston, South Carolina. [Civil Docket 5:08-cv-00410-2, R. 6] The government then petitioned for, and the district court granted, a stay in the civil case pending any criminal action. [Civil Docket R. 5] While the civil action was stayed, Anderson filed a notice of claim as to the condo. [Civil Docket R. 34]

In 2009, a federal grand jury indicted Bryan and Milby for mail fraud, wire fraud, securities fraud, and money laundering, and also indicted Megan for money laundering. [Criminal Docket 5:09-cr-00181-KKC R. 1] As part of the indictment, the government sought through criminal forfeiture a total of approximately thirty-three million dollars, designating as forfeitable various property, including the condo. [*Id.* at PAGE ID#: 22-25] In 2011, the federal jury found Bryan and Milby guilty of almost all the counts against them. [Criminal Docket R. 349] The defendants then elected to have the district judge determine the forfeiture issue rather than submit it to the jury. [*Id.*] The district court consolidated the civil forfeiture action and the criminal forfeiture action because the actions "involve[d] the same property" and so consolidation would be "an efficient means of resolving them both." [Civil Docket R. 61 at 399] The court mandated that all future filings be made in the criminal action. [*Id.* at 400]

On April 19, 2012, the district court entered a joint-and-several judgment against Bryan and Milby for thirty-three million dollars. [Criminal Docket R. 469] Pursuant to that judgment, the district court adopted a preliminary order of forfeiture, designating as forfeitable against Bryan various property, including the condo. [*Id.*] That same month, Corrie Anderson petitioned the court "for an ancillary hearing pursuant to 21 U.S.C. § 853(n)," asserting an interest in the condo. [Criminal Docket R. 463] In March 2013, the court held the ancillary hearing, at which Anderson testified. [Criminal Docket R. 648] Then, in January 2014, the district court amended the preliminary order of forfeiture to remove the condo, noting that "Anderson has produced sufficient evidence that she was a bona fide purchaser of the condo." [Criminal Docket R. 645 at 10563] The district court then issued a final order of forfeiture which did not include the condo. [Criminal Docket R. 646] Because the consolidated cases had been proceeding on the criminal docket, the court entered a copy of the final order of forfeiture on the civil docket as well, terminating the government's civil forfeiture action. [Civil Docket R. 62]

Citing 28 U.S.C. § 2465, Anderson filed a motion for $29,396.50 in attorney's fees, claiming that she had substantially prevailed in a civil proceeding to forfeit property. [Criminal Docket R. 650] The district court denied Anderson's motion, holding that it could not "find that Congress clearly and unequivocally waived sovereign immunity to permit an award of attorney's fees against the government." [Criminal Docket R. 674 at 11357] Anderson timely appealed.

## II.

28 U.S.C. § 2465(b)(1), CAFRA's fee-shifting provision, provides that "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for reasonable attorney fees and other

litigation costs reasonably incurred by the claimant." The issue before us is whether Anderson's situation is one for which this statute allows an award of attorney's fees. To answer that question, we must interpret the statute. "We review questions of statutory interpretation de novo." *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008). "The statutory-interpretation analysis begins by examining the language of the statute itself to determine if its meaning is plain." *Id.* (internal quotation marks omitted).

The government urges us to view this case through the lens of the "sovereign immunity canon," which states that Congress can waive the United States' sovereign immunity "only by an unequivocal expression in statutory text," *United States v. Droganes*, 728 F.3d 580, 589 (6th Cir. 2013); we resort to this canon only if there is ambiguity in the statute, *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 590 (2008). This is so because the requirement of "an unmistakable statutory expression of congressional intent to waive the government's immunity" is a "canon of interpretation." *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1448 (2012). These canons "are resorted to as guides only where there is an apparent conflict between laws or some other ambiguity." *United States v. Kumar*, 750 F.3d 563, 569 (6th Cir. 2014) (internal citation omitted). Thus, "[o]ur first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If the statute is unambiguous "and the statutory scheme is coherent and consistent," " [o]ur inquiry must cease." *Id* (internal quotation marks omitted). Only if it is ambiguous would we would follow the sovereign immunity canon and "take the interpretation most favorable to the Government." *Cooper*, 132 S. Ct. at 1448.

### III.

Here, with regard to the dispute in this case, the statutory language is clear. At the very least, the language of CAFRA's fee-shifting provision clearly covers attorney fees incurred in the civil forfeiture action.[1] *See United States v. Certain Real Property, Located at 317 Nick Fitchard Road*, 579 F.3d 1315, 1320 (11th Cir. 2009); *see also United States v. Minh Huynh*, 334 F. App'x 636, 638 (5th Cir. 2009) (noting that CAFRA's fee-shifting provision applies "to civil proceedings *to forfeit* property, that is, civil forfeiture actions initiated by the Government"), (internal quotation marks omitted). Here, the government initiated a civil forfeiture action against the condo. The final order of forfeiture did not include the condo. Thus, as an intuitive matter, Anderson "substantially prevail[ed]," *see United States v. Craig*, 694 F.3d 509, 512 (3d Cir. 2012) (suggesting that "a judgment on the merits" or "any relief specific to the forfeiture action" qualified as "substantially prevail[ing]" (alteration in original)), in a "civil proceeding to forfeit property."

Of course, given the complicated procedural posture of this case because the actions were consolidated, the result is not that simple. Consolidation of cases "is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause." *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–97 (1933); *see also Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994) ("This court has held that consolidated cases remain separate actions."). As a technical matter, because of the district court's order, all of Anderson's attorney's work was performed on the docket for the criminal forfeiture action and under the

---

[1] Both of the federal appellate courts to have considered this fee-shifting provision in similar contexts have focused on the ancillary proceeding as the relevant potential "civil proceeding to forfeit property." *See United States v. Moser*, 586 F.3d 1089 (8th Cir. 2009); *United States v. Nolasco*, 354 F. App'x 676 (3d Cir. 2009). Both cases, however, dealt solely with criminal forfeiture actions and thus did not tackle the situation we now face in which a criminal forfeiture action and a civil forfeiture action work in tandem. Because we do not find it necessary to the disposition of this appeal, we decline to address whether attorney's fees would be appropriate for work done during an ancillary proceeding associated with a solely criminal forfeiture action.

criminal forfeiture provisions of the code. But that is not dispositive because the Supreme Court allows attorney's fees to be awarded for work "'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (quoting *Webb v. Bd. of Ed. of Dyer Cnty.*, 471 U.S. 234, 243 (1985)). In both the civil action and the criminal action, Anderson's desired final result was the removal of the condo from the order of forfeiture. This similarity between the civil and the criminal actions is important: in cases involving the appropriateness of attorney's fees in related proceedings we have found significant a similarity in the underlying facts, the procedural history, and the plaintiffs. *See Binta B. v. Gordon*, 710 F.3d 608, 630 (6th Cir. 2013). Here, the property was the same, the judge was the same, the relief sought was the same, and the United States was the plaintiff in both proceedings. Because the district court consolidated the actions and mandated that all future filings be made in the criminal action, Anderson had no choice but to pursue her desired result in the criminal action. This work, however, was useful and necessary to secure this result in *both* the civil action—which the government never sought to terminate—and the criminal action. And Anderson did indeed achieve the result in both cases, as the condo was omitted from the final order of forfeiture in both actions. Because both cases were part of the same litigation—Anderson's attempted vindication of her interest in the condo—and the work done to vindicate her interest achieved the final result in this litigation, she is entitled to attorney's fees.

"[T]he stated purpose of CAFRA is to make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizures." *317 Nick Fitchard Road*, 579 F.3d at 1322 (internal quotation marks omitted). Anderson is exactly the type of

person CAFRA is meant to protect: a third party found to be a bona fide purchaser of property that was forfeited in proceedings against someone else. Although it would be a very different question if Anderson had intervened in a forfeiture stemming solely from the criminal forfeiture provisions of the code—for instance, if the government *had* sought to dismiss the civil forfeiture action—that is not our case. In this case, Anderson successfully defended her interest in the condo, culminating in the removal of the condo from the final order of forfeiture that resolved both the criminal and the civil actions. Because she substantially prevailed in a civil proceeding to forfeit property, she is entitled to attorney's fees under CAFRA.

## IV.

In her brief, Anderson argues that she should recover the amount of fees she sought in her petition for attorney's fees because "it is a reasonable amount and the government did not challenge it." [Anderson Br. 20] Because the district court found she could not recover attorney's fees under the statute, however, it did not rule on whether the amount claimed by Anderson was reasonable. "Absent exceptional circumstances, we normally decline to rule on an issue not decided below." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 576 (6th Cir. 2013) (internal quotation marks omitted). Finding no exceptional circumstances here, we remand the question of the reasonableness of the attorney's fees for further proceedings.

## V.

For the foregoing reasons, we REVERSE the district court's order and REMAND for further proceedings consistent with this opinion.