Eastern District of Kentucky
FILED
MAY 3 0 2017
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 5:09-CR-181-KKC

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                          **OPINION AND ORDER**

GARY MILBY, ET AL.                                                         DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on defendant Gary Milby's motion (DE 705) to vacate his sentence under 28 U.S.C. § 2255. The Court referred the matter to a magistrate judge who conducted a hearing and filed a report in which he recommends that the Court deny the petition. Milby has filed objections to the recommendation. For the following reasons, the Court will overrule the objections.

I.   **Background**

By judgment dated May 16, 2012, this Court sentenced Milby to 240 months (20 years) in prison after he was found guilty of various counts of mail, wire, and securities fraud in connection with a scheme to defraud investors in oil and gas wells. At trial and in the forfeiture proceedings, the government proved that the proceeds derived from the fraud were over $30,000,000. Milby appealed his conviction and the Sixth Circuit Court of Appeals affirmed the Court's judgment. (DE 661, Opinion.)

Milby now moves to vacate his sentence under § 2255. The Court referred the motion to a magistrate judge, who found that Milby raises two overarching issues in his motion. First, Milby alleges that his trial counsel was ineffective, most significantly by coercing him to decline a plea offer by the United States that included a much lighter sentence than Milby ultimately received. Second, Milby argues that James Skinner, a receiver charged

with collecting on Milby's debts, improperly provided materials to the United States to aid the government's investigation of Milby.

The magistrate judge conducted a video status conference at which the United States confirmed that it sent e-mails to Milby's trial counsel that constituted a formal plea offer. Accordingly, the magistrate judge determined that an evidentiary hearing was necessary to determine what actions Milby's trial counsel took in response to the plea offer. The magistrate judge appointed attorney Timothy Schneider to represent Milby on this issue and then conducted a hearing.

Both Schneider and Milby agree that Schneider was appointed to represent Milby only with regard to the issue of whether Milby's trial counsel coerced him to reject the United States' plea offer. The hearing dealt solely with that issue. After the hearing, the magistrate judge issued a report and recommendation in which he concluded that Milby was not entitled to relief on either his claim regarding Skinner's role in the criminal investigation or on his claim of ineffective assistance of counsel.

Attorney Schneider filed objections to the recommendation. Milby also filed his own objections.

## II. Analysis

In his objections, attorney Schneider "objects generally to the entire report and recommendation . . . as not being supported by the evidence and applicable law." "A general objection to the entirety of the Magistrate [Judge]'s report has the same effect as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Accordingly, attorney Schneider essentially files no objections to the magistrate judge's report.

Instead of filing objections to the magistrate judge's recommendation, attorney Schneider moves for a rehearing. In support of this request, Schneider states that Milby left him messages after the hearing indicating that he "was not provided with all of his medication and that he was 'foggy' on the day of [the hearing] and 'he cannot even remembers his testimony before the Magistrate.'"

The Court finds no reason for an additional hearing. With his objections, Milby submits an affidavit in which he states that he was last administered medication on June 13 before the hearing conducted on June 15. He states in his affidavit that, without medication, he experiences panic attacks and his mind jumps from thought to thought. He states that his blood pressure goes down, he stutters or passes out at times, and he cannot keep his mind on any one thing. He states that, on the morning of trial, he was "so disoriented that [he] went to pieces" and that the U.S. Marshals found him "unconscious" in the courthouse after the hearing.

Milby, however, has presented no medical evidence indicating that the missed doses of medication affected his mental capacity or ability to comprehend matters at the hearing. The Court has reviewed the transcript of the hearing. At the beginning of the hearing attorney Schneider advised the magistrate judge that Milby had informed him prior to trial that he normally took as many as 12 medications to treat heart irregularities, blood pressure, and psychiatric conditions. Schneider advised the magistrate judge that Milby had informed him that he did not receive any of this medication on the day of the hearing or the day before the hearing. Milby stated that he received some medication the day before the hearing but that he had not received his "psych drugs" the night before the hearing and had received no drugs at all the day of the hearing. The hearing began at 9:14 a.m.

Schneider told the magistrate judge that Milby had informed him that he was not certain whether the lack of medication had affected his judgment. Nevertheless, Schneider stated that he was communicating well with Milby on the day of the hearing. Schneider stated that Milby was "jumpy" and "nervous" but the magistrate judge noted that Milby said during a prior video conference that he becomes nervous for court appearances. In response to the magistrate judge's questions, Milby stated he knew where he was and the purpose of the hearing. Neither Milby nor Schneider requested that the magistrate judge postpone the hearing. Milby stated a couple of times during the hearing that his memory was "fuzzy" regarding certain events. However, that was to be expected. Milby was being asked to recall events that occurred about five years prior to the hearing. Milby was able to testify as to the relevant events at the hearing. The Court sees no indication in the transcript that Milby was unable to comprehend events or to participate meaningfully in the hearing.

Further, Schneider does not explain what evidence or testimony he would present at a rehearing that he was unable to present at the initial hearing. Again, Milby was able to present testimony on the sole issue that requires a hearing: whether Milby's trial counsel coerced him to turn down a favorable plea deal.

Milby was able to testify that he met with his trial counsel – Michael Murphy – in early April 2011. He testified that Murphy did not explain the contents of the government's plea offer to him but that, instead, Murphy gave Milby the e-mails containing the plea offer in an envelope and told him to discuss the offer with Milby's brother. Milby testified that he understood that the plea offer was for eight years of imprisonment. Milby was further able to testify that Murphy advised him not to accept the offer but to instead go to trial. Milby testified that Murphy told him he would be acquitted if he went to trial and that if he

4

pleaded guilty, he would be sent to jail while his codefendants would be ultimately acquitted.

Milby also testified that he was not receiving his psychiatric medication during the time of the plea negotiations. He was further able to testify that Murphy did not inform him until the just before trial that his co-defendant, Viktor Tsatskin, was cooperating with the government. Milby testified that, had he been advised that the plea offer was in his best interest, he would have accepted it.

Thus, Milby was able to effectively present evidence to support his assertions that Murphy advised him to reject the plea offer. Schneider does not explain what testimony or evidence Milby was unable to present at the hearing that a re-hearing would permit him to offer. The Court sees no purpose in a rehearing and will, accordingly, deny Schneider's request for one.

As for the objections to the magistrate judge's recommendation that Milby filed on his own, Milby first complains about Schneider. Milby states that, because Schneider was appointed to represent Milby only on the plea-offer issue, Milby attempted to coordinate with Schneider on filing objections to the magistrate judge's recommendation. Milby states that Schneider refused to provide Milby with requested documents and that Milby was unable to consult with Schneider before Milby filed his own objections.

As discussed above, Schneider, in effect, did not object to the magistrate judge's recommendation. Nevertheless, he was appointed to represent Milby only on the issue of whether Murphy coerced or forced Milby into rejecting the government's plea offer. The Court has reviewed the magistrate judge's decision, the hearing transcript, and the parties' written pleadings on this issue and sees no objections that could be made.

5

The success of Milby's argument on this issue depends entirely upon a credibility determination. In order for Milby to succeed on this claim, the Court must find Milby more credible than Murphy. Milby testified that Murphy advised him not to take the plea agreement, stating "trust me; I know what I'm doing here." Milby testified that Murphy told him "we were going to win."

Murphy, on the other hand, testified that he and his co-counsel, Jarrod Beck, "very strongly encouraged Mr. Milby to take this plea. I thought it was a great deal . . . I thought that the case against Mr. Milby was somewhat overwhelming, and I advised him on numerous occasions that I did not think we would be successful at trial. I just thought there was too much evidence against him." Murphy testified that Milby just kept saying, "I can't do that much time, I can't do that much time."

As noted by the magistrate judge, co-counsel Beck's testimony was consistent with Murphy's. Furthermore, the evidence presented at trial against Milby was indeed overwhelming as Murphy testified. The Court finds it much more likely that, in the face of that evidence, Murphy would have instructed Milby to accept a favorable plea offer rather than insist that Milby would be found not guilty at trial. Schneider's failure to object to the magistrate judge's credibility determination was reasonable. Instead, Schneider objected to the hearing itself.

Milby next argues that the magistrate judge should have conducted a hearing on whether Skinner was acting as a de facto government agent when he seized certain items belonging to Milby. The magistrate judge rejected any claim based on Skinner's activities for three reasons.

First, the magistrate judge determined that, to the extent that Milby was raising a procedural issue, Milby had not showed that the failure to conduct a hearing on the Skinner

6

issue resulted in a "fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure." *United States v. Osbourne*, 286 F. Supp. 2d 891, 895 (E.D. Tenn. 2003). Second, the magistrate judge determined that, if Milby was asserting that Skinner violated his Fourth Amendment rights, such a claim could not be raised in a § 2255 motion. The magistrate judge noted that Milby had not raised this issue on direct appeal. Finally, the magistrate judge determined that Milby's claim regarding Skinner's activities was "fatally generic and conclusory."

A hearing is necessary on a § 2255 motion only "where there are substantial issues of fact involved." *Pettway v. United States*, 216 F.2d 106, 108 (6th Cir. 1954) (citing *United States v. Hayman*, 342 U.S. 205, 222-223 (1952)). "[A] hearing is not required where the question involved is a pure question of law which can be properly disposed of by a consideration of the motion, undisputed facts, and the files and records of the case...." *Id.* The magistrate judge disposed of Milby's Skinner-based claims on three different grounds, all of which were purely legal. Milby does not point to any factual disputes on this issue that required a hearing.

Milby also objects to the magistrate judge's determination that he failed to show that Murphy was ineffective at trial. Milby argues that various of Murphy's decisions "support an inference" that Murphy was not acting in Milby's best interests but that instead Murphy was acting in the interests of a joint defense with Milby's codefendants. The decisions that Milby objects to include Murphy's failure to move to sever Milby's trial from that of his codefendants, Murphy's alleged failure to develop proof on certain defenses, and Murphy's alleged failure to "explor[e]" Milby's mental health history.

Again, however, the evidence presented at trial against Milby was overwhelming. Accordingly, Milby could not demonstrate that he was actually prejudiced by any actions that Murphy took. To prevail on an ineffective assistance of counsel claim, Milby must show "there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). Milby does not even appear to allege that the outcome of the proceedings would have been different had Murphy made different decisions. Milby certainly fails to make the necessary showing on this issue.

Furthermore, the magistrate judge explained that each of Murphy's decisions now contested by Milby was objectively reasonable. Milby does not object to that determination but argues that Murphy's decisions at least "support an inference" that he was not acting in Milby's interest. That is not sufficient for an ineffective assistance of counsel claim.

Finally, Milby objects to the magistrate judge's determination that, even if Murphy failed to timely inform Milby that codefendant Tsatskin was cooperating with the government and would likely testify on the government's behalf at trial, that failure did not constitute ineffective assistance of counsel. Milby argues that this was an important piece of information that "changed the entire calculation" of whether to plead guilty.

Murphy informed Milby of the plea agreement on April 7, 2011. Milby states that Murphy did not tell him about Tsatskin's status as a cooperator until the day before trial began on April 19, 2011. Murphy could not recall precisely when he informed Milby of Tsatskin's cooperation. The Court will assume that Murphy did not inform Milby that Tsatskin was cooperating until the day before trial. As the magistrate judge explained in his recommendation, to succeed on a claim that his trial counsel's ineffectiveness caused Milby to reject a plea offer and proceed to trial, Milby must show:

8

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

The Court cannot find that there is a "reasonable probability" that Milby would have accepted the plea offer had he known of Tsatskin's cooperation. Milby himself does not make this assertion. During his testimony, Milby agreed that information that Tsatskin was cooperating would have *affected* his decision regarding the plea agreement. In his objections, Milby states that the fact that Tsatskin was testifying against him "changed the entire calculation of the decision facing" him. Milby does not, however, affirmatively state that he would have pleaded guilty had he known this information.

Moreover, even if Milby had testified that he would have pleaded guilty if he had known about Tsatskin, his actions belie any such assertion. There is no dispute that, after learning of Tsatskin's cooperation on April 18, Milby made no attempt to accept the government's plea offer. There is no indication that the offer was not still on the table at that time.

Finally, even in the hearing conducted by the magistrate judge, Milby was not able to concede that he was indeed guilty of the crimes he was ultimately convicted of committing. He testified that he told Murphy "from the very beginning, that if I had done something wrong . . . that I wanted to work something out." But when the government asked Milby if it was true that he did not think he had done anything wrong, Milby testified, "I've been doing it for years, you know. I had all these lawyers telling me that what I was doing was right, you know."

9

A particularly incriminating piece of evidence offered at trial was a tape of Milby referring to himself as "Jerry Miller" while training salespersons who would sell investments in the oil and gas wells. At the hearing, Milby denied ever doing any such thing. It is not likely that Milby would have pleaded guilty if he cannot even today admit to actions that are recorded on tape.

Accordingly, the Court cannot find a reasonable probability that, had Milby been informed earlier of Tsatskin's cooperation, he would have accepted the government's plea offer.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) The Court adopts the magistrate judge's report and recommendation (DE 727) as the opinion of the Court;

2) Milby's objections to the magistrate judge's report and recommendation are OVERRULED;

3) For the reasons stated in the magistrate judge's report and recommendation and this opinion, Milby's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (DE 705) is DENIED; and

4) A certificate of appealability will not be issued, Milby having failed to show "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

This 30th day of May 2017



Signed By:
Karen K. Caldwell
United States District Judge